IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
BEAUMONT DIVISION

| | |
|---|---|
| INDORAMA VENTURES HOLDINGS L.P. § § Plaintiff, § § vs. § § FACTORY MUTUAL INSURANCE § COMPANY, § § Defendant. § | CIVIL ACTION NO. 1:24-cv-00404-MJT |

**DEFENDANT FACTORY MUTUAL INSURANCE COMPANY'S
RULE 12(B)(6) MOTION TO DISMISS**

Pursuant to Federal Rule of Civil Procedure Rule 12(b)(6), Defendant Factory Mutual Insurance Company ("FM") submits this Rule 12(b)(6) Motion to Dismiss. FM respectfully requests the Court enter judgment in favor of FM on all counts and dismiss this action in its entirety.

**I.   SUMMARY OF ARGUMENT**

This matter involves an insurance coverage dispute arising out of a November 27, 2019 explosion at TPC Group's chemical plant in Port Neches, Texas. The force of the explosion damaged a facility across the street (the "PO/MTBE Plant") owned by Huntsman International LLC ("Huntsman"). At the time of the explosion, Huntsman insured the PO/MTBE Plant through its captive insurance carrier, International Risk Insurance Company ("IRIC"). Defendant FM provided a policy of reinsurance to IRIC ("Reinsurance Agreement").

On January 3, 2020, Huntsman sold the PO/MTBE Plaint to Plaintiff Indorama Ventures Holdings L.P. ("Indorama"). As part of that sale, Huntsman assigned its rights under the IRIC Policy to Indorama.

Through its Complaint, Indorama brings a direct action against IRIC's reinsurer, FM. However, as the named insured under IRIC's policy, Huntsman and Indorama as its assignee only have an insurance claim against IRIC; they have no right to assert a claim directly against FM. In other words, there is no contractual privity between Huntsman and FM and the purported assignment of the *IRIC Policy* from Huntsman to Indorama does not create such privity. Because there is no contractual privity between Indorama and FM, Indorama has no right to maintain a claim against FM and its Complaint should be dismissed. Similarly, because an underlying insured may not maintain a direct right of action against a reinsurer, the claims for bad faith and breach of Texas's insurance code should be dismissed.

In the alternative, to the extent Indorama is seeking benefits under the Reinsurance Agreement that FM issued to IRIC, Indorama is subject to the terms and conditions of that agreement. The Reinsurance Agreement contains a mandatory, exclusive forum-selection clause requiring that any disputes between the parties be brought in the courts of the State of Rhode Island and Providence Plantations.[1] Substantively identical forum-selection clauses are routinely upheld by Texas courts as valid and enforceable.[2] Accordingly, Indorama's commencement of suit in this Court is in direct contravention of the contractual requirement that Rhode Island is the only proper forum for litigating any dispute. Texas courts have determined that the proper procedural vehicle for enforcing a valid forum-selection clause is a motion to dismiss. Therefore, this Motion should be granted, and Indorama's claims against FM should be dismissed without prejudice to re-filing in the State of Rhode Island.

---

[1] In 2020, the Rhode Island constitution was amended to formally drop "and Providence Plantations" from its full name.

[2] *See, e.g., Chandler Mgmt. Corp. v. First Specialty Ins. Corp.*, 452 S.W.3d 887, 890 (Tex. App. – Dallas 2014, no pet.).

## II. FACTUAL BACKGROUND

In its Complaint, Indorama alleges:

> FM Global issued and/or reinsures property and business interruption policy no. PROP 19-20 with a period of November 1, 2019 to November 1, 2020 ("Policy"), which was issued to Huntsman Corporation (and various affiliates) as insureds.[3]

In fact, it was IRIC that issued Policy No. PROP 19-20 to Huntsman Corporation with effective dates of coverage from November 1, 2019 to November 1, 2020 (the "IRIC Policy").[4] FM then issued a Reinsurance Agreement whereby it agreed to reinsure the IRIC Policy subject to the terms and conditions of the Reinsurance Agreement.[5]

As alleged in Indorama's Complaint, on November 27, 2019, an explosion at TPC Group's chemical plant in Port Neches, Texas caused Huntsman's PO/MTBE Plant in Port Neches, Texas to sustain damage.[6] Huntsman submitted a claim under the IRIC Policy for its losses.[7]

On January 3, 2020, Indorama acquired the PO/MTBE Plant and other assets from Huntsman.[8] As part of closing that transaction, Huntsman and Indorama entered into a January 3, 2020 Insurance Assignment Agreement whereby Huntsman assigned its rights under the IRIC Policy to Indorama.[9]

---

[3] Indorama's Complaint at ¶ 20.

[4] A copy of the IRIC Policy No. PROP 19-20 is attached as Exhibit A.

[5] A copy of the Reinsurance Agreement is attached as Exhibit B. While Indorama did not attach a copy of the IRIC Policy or the Reinsurance Agreement to its Complaint, a defendant may introduce a document as an exhibit in a Motion to Dismiss when the document is a pertinent part of the pleading. *In re Enron Corp. Sec., Derivative & "Erisa" Litig.*, No. CIV.A. H-01-3624, 2003 WL 23316646, at *5 (S.D. Tex. Mar. 27, 2003).

[6] Complaint ¶¶ 18-19.

[7] *Id*. at ¶ 22.

[8] *Id*.

[9] A copy of the Insurance Assignment Agreement is attached as Exhibit C.

### III.  LEGAL STANDARD

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a complaint must contain sufficient factual matter which, if accepted as true, "state[s] a claim to relief that is plausible on its face."[10] A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[11] A plaintiff "must plead more than labels and conclusions," and "[f]actual allegations must be enough to raise the right to relief above the speculative level."[12] "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief."[13] A court deciding a motion to dismiss under Rule 12(b)(6) must "accept[] all well-pleaded facts as true."[14] However, courts will not presume the truth of any "legal conclusion couched as a factual allegation,"[15] or any allegation that is contradicted by documents attached to or referenced in the complaint.[16] Furthermore, the court may consider "documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint."[17]

---

[10]  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

[11]  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[12]  *Twombly*, 550 U.S. at 555.

[13]  *Iqbal*, 556 U.S. at 678.

[14]  *Smit v. SXSW Holdings, Inc.*, 903 F.3d 522, 527 (5th Cir. 2018).

[15]  *Covington v. City of Madisonville, Texas*, 812 F. App'x. 219, 224 (5th Cir. 2020) (citing *Iqbal*, 556 U.S. at 678).

[16]  *Kamps v. Baylor Univ.*, 592 F. App'x 282, 284 (5th Cir. 2014).

[17]  *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010).

## IV. ARGUMENTS AND AUTHORITIES

**A.     Under Texas law, an insured cannot assert a claim against a reinsurer absent an agreement otherwise.**

Huntsman assigned its rights under the IRIC Policy to Indorama. But rather than sue IRIC, Indorama sued FM, Huntsman's *reinsurer*. Under the plain terms of the Reinsurance Agreement and Texas law, neither Huntsman nor Indorama as Huntsman's assignee have a right to assert a direct claim against FM.

Importantly, FM did not issue a policy directly to Huntsman. Rather, FM reinsured Huntsman's captive insurer, IRIC. "Reinsurance … has been described as the transfer of all or part of one insurer's risk to another insurer, which accepts the risk in exchange for a percentage of the original premium."[18] Reinsurance is essentially "insurance for insurance companies."[19] It is the ceding by one insurance company to another of all or a portion of its risks for a stipulated portion of the premium.[20] The Texas Supreme Court explained a critical difference between direct insurance and reinsurance as follows:

> … direct insurance is subject to state insurance regulation, while reinsurance is not. Reinsurance is not regulated because it typically involves the reallocation of risk between two insurance companies rather than a consumer-insurance transaction.[21]

And that is exactly what happened here. IRIC agreed to insure Huntsman under a captive insurance program and reinsured its risks with FM under the FM Reinsurance Agreement. There is no direct contract between FM and Huntsman, or its assignee Indorama.

---

[18]   *Tex. Dep't. of Ins. v. Am. Nat'l Ins. Co.*, 410 S.W.3d 843, 848 (Tex. 2012) (internal citation omitted).

[19]   *Houston Cas. Co. v. Lexington Ins. Co.*, No. CV H-05-1804, 2007 WL 9751933 at *3 (S.D. Tex. June 25, 2007), *report and recommendation adopted*, 2007 WL 9751912 (S.D. Tex. July 27, 2007) (quoting 14 Eric Mills Holmes, L. Anthony Sutin, *Holmes' Appleman on Insurance* 2d § 102.1 (2000)).

[20]   *Id*.

[21]   *Tex. Dep't. of Ins.*, 410 S.W.3d at 845.

Because there is no direct contractual relationship, Texas courts have recognized that there is no right of action between the insured and the reinsurer. In *State & County Mutual Fire Insurance Co. v. Miller*, the Texas Supreme Court recognized that "[u]nder general reinsurance law, a policyholder may not bring any direct claims against a reinsuring company. Absent an agreement creating direct liability in the reinsurer, all claims under the policy must be asserted against the original insurance company."[22] The *Miller* court's analysis was based, in part, on TEX.INS.CODE art. 5.75–1(g), which has since been recodified as § 493.055 of the Texas Insurance Code. That statute, entitled "Limitation on the Rights Against Reinsurer", precludes claims against a reinsurer and specifically states:

> A person does not have a right against a reinsurer that is not specifically stated in:
>
> (1) the reinsurance contract; or
>
> (2) a specific agreement between the reinsurer and the person.

Courts in Texas have used this statute to determine that all claims brought by the insured must be dismissed against the reinsurer – including claims arising out of the Texas Insurance Code. In *Health First Health Plans, Inc. v. American National Insurance Co.*, the United States District Court for the Southern District of Texas discussed whether claims under Chapters 541 and 542 of the Texas Insurance Code against a reinsurer should be dismissed under § 493.055.[23] In rejecting Health First's argument that § 493.055 did not apply to its Chapter 541 and 542 claims, the court noted:

---

[22] 52 S.W.3d 693, 697 (Tex. 2001) (citing TEX.INS.CODE art. 5.75–1(g) ("A person does not have any rights against a reinsurer that are not specifically set forth in the contract of reinsurance or in a specific agreement between the reinsurer and the person."); *see also Malaysia British Assurance v. El Paso Reyco, Inc.,* 830 S.W.2d 919, 921 (Tex.1992) ("If, as in this case, the reinsurance contract allows only the reinsured company to bring a claim against the reinsurer, the original insureds have no basis for a claim against the reinsurer.").

[23] No. 3:20-cv-00226, 2021 WL 4169211 (S.D.Tex. Sep. 13, 2021), *report and recommendation adopted*, 2021 WL 4458754 (S.D.Tex. Sep. 29, 2021).

> Health First contends that section 493.055 is nothing more than a direct-action statute prohibiting an original insured from suing a reinsurer. Although section 493.055 ***unquestionably precludes an original insured from suing a reinsurer***, the statute's express language ***also precludes a reinsured like Health First from suing its reinsurer for extra-contractual claims***.[24]

Based on § 493.055 and Texas court precedent, Indorama (as an assignee of Huntsman) has no right to bring suit against FM unless specifically stated in the reinsurance contract or a specific agreement between the reinsurer (FM) and Huntsman (now Indorama). Here, there is nothing in the FM Reinsurance Agreement that allows Huntsman (now Indorama) to bring a claim against FM. In fact, the Reinsurance Agreement specifically precludes third parties from making claims against FM. In particular, the Reinsurance Agreement contains the following provisions that specify the agreement is limited to FM and IRIC:

> **B. Cooperation of the Company**
>
> * * *
>
> In no event shall anyone other than the Company or, in the event of the Company's insolvency, its receiver, liquidator, or statutory successor, have any rights under this Agreement.[25]

The Reinsurance Agreement also states:

> **X. Exclusive Contract**
>
> In no event shall any party, other than the Company, or in the event of the Company's insolvency, its liquidator, have any rights against the Reinsurer under this Reinsurance Agreement.

In the above provisions, "Company" refers to IRIC. Based on the clear and unambiguous terms of the Reinsurance Agreement, only IRIC has a right to make a claim under the Reinsurance Agreement – not Huntsman, or Indorama as Huntsman's assignee.

---

[24]   *Id.* at *4 (emphasis added).

[25]   Exhibit B, p. FM_000132.

Nor is there any agreement between FM and Huntsman that extends the right to bring a direct claim against FM. While Huntsman assigned its rights to Indorama upon the sale of its assets on January 3, 2020, the Insurance Assignment Agreement only assigns Huntsman's rights to its <u>claim under the IRIC Policy</u>. The assignment does not contain a "specific agreement" between Indorama and FM that would allow it to bring a direct action against FM as required by § 493.055.[26]

Simply put, Indorama has no right to make a claim on the Reinsurance Agreement; it can only pursue a claim against IRIC, the insurance carrier that issued a policy to Huntsman. Accordingly, this matter in its entirety should be dismissed against FM.

**B.** **In the alternative, Indorama's claim should be dismissed due to the Reinsurance Agreement's exclusive forum-selection provision.**

If it is determined that Indorama is permitted to maintain a claim under the Reinsurance Agreement, this matter should still be dismissed because Indorama failed to file suit in the proper jurisdiction.

**1.** **The Reinsurance Agreement contains a mandatory forum-selection clause.**

The Reinsurance Agreement contains an unambiguous, mandatory forum-selection clause designating the Courts of the State of Rhode Island as the exclusive forum for any disputes between the parties. Specifically, the forum-selection clause states:

> **Q. Jurisdiction**
>
> For reinsured policies issued by or on behalf of the Company in the United States of America, Canada, or Mexico, to include subsidiary jurisdictions thereof, this Agreement shall be governed exclusively by the Laws of the State of Rhode Island and Providence Plantations and any disputes arising hereunder

---

[26] Exhibit C.

> shall be exclusively subject to the jurisdiction of the State of Rhode Island and Providence Plantations.[27]

Indorama's claims against FM should be dismissed because the only proper forum for this dispute arising out of the Reinsurance Agreement is a court of the State of Rhode Island.[28]

A motion to dismiss is the proper procedural mechanism to enforce a forum-selection clause.[29] Texas law applies in original proceedings to determine enforcement of forum-selection clauses, even when the contract contains a choice-of-law provision selecting another state's substantive law.[30] A trial court's refusal to enforce a valid mandatory forum-selection clause is properly addressed by mandamus review.[31]

The language of the forum-selection provision of the Reinsurance Agreement is clear and unambiguous, mandating that the parties adjudicate any dispute exclusively in the State of Rhode Island. The Texas Supreme Court has held that forum-selection clauses are "creatures of contract and we must give effect to the parties' intent as expressed in the four corners of the document."[32]

---

[27] Exhibit B, p. FM_000137.

[28] *See Chandler Mgmt. Corp.*, 452 S.W.3d at 890 (quoting *Phoenix Network Techs. (Europe) Ltd. v. Neon Sys., Inc.*, 177 S.W.3d 605, 610 (Tex. App.—Houston [1st Dist.] 2005, no pet)); *Travel Exp. Inv. Inc. v. AT & T Corp.*, 14 So. 3d 1224, 1226 (Fla. 5th DCA 2009) (finding that nearly the same exclusivity provision "clearly makes this clause unambiguous and mandatory;" *See also, Agile Assur. Group, Ltd. v. Palmer*, 147 So. 3d 1017, 1018 (Fla. 2d DCA 2014) (citing with approval the Fifth DCA's holding in *Travel Exp. Inv. Inc.* that "the term 'the exclusive jurisdiction' contains words of exclusivity" and renders a venue selection "mandatory, not permissive."). *See also*, *Deeba v. First Specialty Ins. Corp.*, 2014 WL 4852268, at *2 (W.D. Okla. Sept. 29, 2014) (reviewing a nearly identical forum-selection clause as in the XL Policy and finding "the forum selection clause within the insurance policy issued . . . is mandatory"); *Saye v. First Specialty Ins. Co.*, 2015 WL 1737949, at *5 (E.D.N.Y. Apr. 16, 2015) (reviewing nearly the same clause and finding "the forum-selection clause is mandatory because the plain meaning of the words used by the parties to the contract 'manifest an intention to limit jurisdiction to a particular forum.'"); *Botach Mgmt. Grp. vs. Landmark Am. Ins. Co.*, Case No. BC473953, Sup. Ct. of California, County of Los Angeles (November 29, 2012) (enforcing a similar forum-selection clause).

[29] *See In re AIU Ins. Co.*, 148 S.W.3d 109, 111-12 (Tex. 2004); *see also Deep Water Slender Wells, Ltd. v. Shell Int'l Exploration & Prod., Inc.*, 234 S.W.3d 679, 687 (Tex. App.—Houston [14th Dist.] 2007, pet. denied).

[30] *In re Bambu Franchising LLC,* 2017 WL 4003428, at *2 (Tex. App.—Dallas Sept. 12, 2017, no pet.); *See In re AIU Ins. Co.*, 148 S.W.3d at 111

[31] *See In re FC Stone, LLC*, 348 S.W.3d 548, 550 (Tex. App.-Dallas 2011, no pet.).

[32] *Pinto Tech. Ventures, L.P. v. Sheldon*, No. 16-0007, 2017 WL 2200357, at *12 (Tex. May 19, 2017).

Here, the plain use language establishes that the forum-selection clause is mandatory. Similar forum-selection clauses have been held by courts around the country to be both exclusive and mandatory.[33] The exclusive forum-selection clause represents the parties' agreement to exclusively litigate in a particular forum.

    2.    **<u>Under direct-benefits estoppel, Indorama is subject to the forum-selection provision in the Reinsurance Agreement.</u>**

It is well established that under Texas law a party seeking the benefits of a contract is subject to the terms of that contract. The Dallas Court of Appeals recently reiterated this axiom, noting:

> Under direct-benefits estoppel, "a non-signatory who is seeking the benefits of a contract or seeking to enforce it 'is estopped from simultaneously attempting to avoid the contract's burdens.' " *Rachal v. Reitz*, 403 S.W.3d 840, 846 (Tex. 2013) (citing *In re Kellogg Brown & Root, Inc*., 166 S.W.3d 732, 739 (Tex. 2005)). "[A] litigant who sues based on a contract subjects him or herself to the contract's terms." *In re Weekley Homes, L.P*., 180 S.W.3d 127, 131 (Tex. 2005) (quoting *In re FirstMerit Bank, N.A*., 52 S.W.3d [749, 755 (Tex. 2001)]. To sue "based on a contract" means to "seek, through the claim, to derive a direct benefit from the contract." *Loya v. Loya,* 507 S.W.3d 871, 877 (Tex. App.—Houston [1st Dist.] 2016, no pet.) (quoting *In re Weekley Homes*, 180 S.W.3d at 131). Whether a claim seeks a direct benefit from the contract "turns on the substance of the claim, not artful pleading." *In re Weekley Homes*, 180 S.W.3d at 131–32. For example, "nonparties generally must arbitrate claims if liability arises from a contract with an arbitration clause, but not if liability arises from general obligations

---

[33]   *See, e.g., Al Copeland Investments, LLC v. First Specialty Ins. Corp*., 2017 WL 2831689 (E.D. La. June 29, 2017), aff'd sub nom. Al Copeland Investments, L.L.C. v. First Specialty Ins. Corp.*, 884 F.3d 540 (5th Cir. 2018); *Stephen Saye d/b/a Gastonian v. First Specialty Ins. Corp*., 2014 WL 1386565 (N.D. Tex. Apr. 9, 2014); *Saye v. First Specialty Ins. Corp*., 2015 WL 1737949, at *5 (reviewing similar clause and finding "the forum-selection clause is mandatory because the plain meaning of the words used by the parties to the contract 'manifest an intention to limit jurisdiction to a particular forum'"); *Deeba v. First Specialty Ins. Corp*., 2014 WL 4852268, at *4; *Chandler Mgmt. Corp. v. First Specialty Ins. Corp.*, 2013 WL 395577, at *1-2 (N.D. Tex. Jan. 31, 2013). *See also, Agile Assur. Group, Ltd.,* 147 So.3d at 1018 (Fla. 2d DCA 2014) (citing with approval the Fifth DCA's holding in *Travel Exp. Inv. Inc*. that "the term 'the exclusive jurisdiction' contains words of exclusivity" and renders a venue selection "mandatory not permissive."); *Botach Mgmt. Grp. v. Landmark Am Ins. Co*., Case No. BC473953, Sup. Ct. of California, County of Los Angeles (Nov. 29, 2012) (enforcing similar forum-selection clause).

imposed by law." *In re Vesta Ins. Grp., Inc.*, 192 S.W.3d 759, 761 (Tex. 2006).[34]

Courts applying Texas and federal law have found that direct-benefits estoppel applies to forum selection clauses in a contract when a non-party is seeking a direct benefit from the contract.[35]

Here, Indorama is seeking to recover benefits from FM under the Reinsurance Agreement (the only contract to which FM is a party) by claiming approximately $50 million from FM.[36] As such, Indorama is subject to the terms of the Reinsurance Agreement, including the forum-selection clause.

### 3. The Forum-Selection Clause is Presumptively Valid and Enforceable.

The mandatory forum-selection clause in the Reinsurance Agreement is valid and enforceable. Under Texas law, forum-selection clauses are generally enforceable and presumptively valid.[37] Failing to enforce a forum selection clause creates inefficiency by enabling forum-shopping, wasting judicial resources, and delaying adjudication on the merits.[38]

---

[34] *MRT of Kemp TX-SNF, LLC v. Lloyd Douglas Enter., LC*, No. 05-23-00574-CV, 2024 WL 4052334, at *5 (Sep. 5, 2024, no pet. h.).

[35] *See, e.g., Noble Drilling Servs., Inc. v. Certex USA, Inc.*, 620 F.3d 469, 473 (5th Cir. 2010) ("Courts have applied direct benefits estoppel to bind a non-signatory to a [forum-selection clause] when the non-signatory knowingly exploits the contract containing the ... clause and obtains a direct benefit from that contract"); *Hellenic Inv. Fund, Inc. v. Det Norske Veritas*, 464 F.3d 514, 517–20 (5th Cir. 2006) ("Direct-benefit estoppel involve[s] non-signatories who, during the life of the contract, have embraced the contract despite their non-signatory status but then, during litigation, attempt to repudiate the [forum-selection] clause in the contract."); *Harland Clarke Holdings Corp. v. Milken*, 997 F.Supp.2d 561, 583 (W.D. Tex. 2014); *Stellar Restoration Servs., LLC v. Courtney*, 533 F.Supp.3d 394, 423 (E.D. Tex. 2021) ("The direct-benefits estoppel doctrine will bind a non-signatory to a forum selection clause if the non-signatory 'knowingly exploits the agreement' containing the clause. Put another way, the doctrine prevents a non-signatory from 'hav[ing] it both ways,' whereby the non-signatory attempts to benefit from one part of the contract but avoid the forum selection clause contained therein.") (quoting *Bridas S.A.P.I.C. v. Government of Turkmenistan*, 345 F.3d 347, 361-2 (5th Cir. 2003)); *Ney v. 3i Gp. PLC*, No. 1:20-CV-1142-LY-ML, 2021 WL 8082411, at *12 (W. D. Tex. Apr. 13, 2021).

[36] Complaint, ¶ 64.

[37] *In re Laibe Corp.*, 307 S.W.3d 314, 316 (Tex. 2010) (orig. proceeding) (per curiam); *In re Int'l Profit Assocs.*, 274 S.W.3d 672, 680 (Tex. 2009) (orig. proceeding) (per curiam).

[38] *See In re Lisa Laser USA, Inc.* 310 S.W.3d 880, 883 (Tex. 2010).

As noted by the Supreme Court of Texas:

> A trial court abuses its discretion in refusing to enforce the clause unless the party opposing enforcement clearly shows "(1) enforcement would be unreasonable or unjust, (2) the clause is invalid for reasons of fraud or overreaching, (3) enforcement would contravene a strong public policy of the forum where the suit was brought, or (4) the selected forum would be seriously inconvenient for trial."[39]

Dismissal without prejudice of Plaintiffs' lawsuit allows Indorama an opportunity to pursue any viable claims against FM in Rhode Island, the contractually agreed upon forum for suits arising from the Reinsurance Agreement. The specific forum-selection clause in the Reinsurance Agreement is valid, and enforcement of the clause is compatible with Texas law and public policy.

## V. CONCLUSION

Indorama, as assignee of Huntsman, has no contractual privity with FM in its capacity as a reinsurer. As such, Indorama has no standing to pursue a claim against FM under the Reinsurance Agreement. Accordingly, Indorama's claims against FM should be dismissed.

Alternatively, the forum-selection clause contained in the Reinsurance Agreement is valid and enforceable, and Indorama cannot meet its heavy burden to avoid it. Accordingly, Defendant FM respectfully prays that the Court dismiss Indorama's claims against it in this lawsuit without prejudice to re-filing in Rhode Island, and for such other and further relief to which it may be entitled.

---

[39] *In re Laibe Corp*, 307 S.W.3d at 316 (citing *In re ADM Investor Servs., Inc.*, 304 S.W.3d 371, 375 (Tex.2010).

Respectfully submitted,

**ZELLE LLP**

By:    /s/ *Shannon M. O'Malley*
   Shannon M. O'Malley
   Texas Bar No. 24037200
   somalley@zellelaw.com
   Kiri Deonarine
   Texas Bar No. 24105298
   kdeonarine@zellelaw.com

901 Main Street, Suite 4000
Dallas, TX  75202
Telephone:   214-742-3000
Facsimile:   214-760-8994


   Kelly A. Librera (*pro hac vice to be filed*)
   klibrera@winston.com
   George E. Mastoris (*pro hac vice to be filed*)
   gmastoris@winston.com
   Adam Moskowitz (*pro hac vice to be filed*)
   apmoskowitz@winston.com

WINSTON & STRAWN LLP
200 Park Avenue
New York, NY 10166-4193
Telephone:   212-294-6700
Facsimile:   212-294-4700

**ATTORNEYS FOR DEFENDANT FACTORY MUTUAL INSURANCE COMPANY**

## CERTIFICATE OF SERVICE

    I certify that a true and correct copy of the foregoing has been provided to all known counsel of record pursuant to the Federal Rules of Civil Procedure as follows:

| | |
|---|---|
| Jack P. Carole | Michael David Lichenstein (*Pro Hac Vice* pending) |
| jpc@obt.com | mlichtenstein@lowenstein.com |
| ORGAIN BELL & TUCKER LLP | Eric Jesse (*Pro Hac Vice* pending) |
| 470 Orleans Street, Fourth Floor | ejesse@lowenstein.com |
| Beaumont, TX 77701 | LOWENSTEIN SANDLER LLP |
| Telephone: 409-838-6412 | 1251 Avenue of the Americas |
| ***Attorneys for Plaintiff Indorama Ventures Holdings L.P.*** | New York, NY 10020 |
| | Telephone: 212-262-6700 |
| | ***Attorneys for Plaintiff Indorama Ventures Holdings L.P.*** |

                                                           */s/ Shannon M. O'Malley*
                                                           Shannon M. O'Malley